

**SO ORDERED.**

**SIGNED this 10 day of January, 2006.**

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

_____
                **John C. Cook**
     **UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION**

| IN RE | ) | |
|---|---|---|
| | ) | No. 05-15504 |
| **NICOLE ELAINE GORE,** | ) | |
| | ) | Chapter 7 |
| **Debtor** | ) | |

**M E M O R A N D U M**

This matter is before the court on the debtor's motion to redeem personal property from the lien held by Lendmark Financial Services, Inc. The debtor seeks to redeem a 1999 Oldsmobile Alero automobile from a second lien held by Lendmark for the sum of $1.00. According to the motion, the vehicle is worth $2,765.00 and Athens Community Federal Bank holds a first-priority security interest therein securing a debt of $2,919.51. Accordingly, says the debtor, Lendmark's second-priority lien in the automobile is valueless. Lendmark has not responded to the motion.

At the time this case was commenced, 11 U.S.C. § 722 provided as follows, in pertinent part:

> An individual debtor may . . . redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title . . . by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

There does not appear to be any question that the vehicle constitutes tangible personal property, that it was and is intended primarily for personal, family, or household use, that the debt to Lendmark is a consumer debt, or that the property is exempt. Under 11 U.S.C. § 506(a), "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property." Because the vehicle is fully encumbered by the first-priority security interest, the value of Lendmark's interest and the amount of its allowed secured claim are zero. Accordingly, under the literal language of the statutes, the debtor may redeem the vehicle by paying Lendmark nothing.

The court must, however, consider the effect on this analysis of the Supreme Court's decision in *Dewsnup v. Timm*, 502 U.S. 410, 112 S. Ct. 773 (1992). In that case, the Court held that a debtor may not "strip off" a lien on real property under 11 U.S.C. § 506(d) if the creditor holds an allowed claim and that claim is secured by a lien, irrespective of the present value of the lien. *Id.*, 502 U.S. at 415-20. In other words, § 506(d) may be employed to avoid a lien only if it secures a claim that has been disallowed. *Id.* at 415-16. The Court held that the statute does not abrogate pre-Code law to the effect that real property liens "ride through" bankruptcy:

We think, however, that the creditor's lien stays with the real property until the foreclosure. That is what was bargained for by the mortgagor and the mortgagee. The voidness language sensibly applies only to the security aspect of the lien and then only to the real deficiency in the security. Any increase over the judicially determined valuation during bankruptcy rightly accrues to the benefit of the creditor, not to the benefit of the debtor and not to the benefit of other unsecured creditors whose claims have been allowed and who had nothing to do with the mortgagor-mortgagee bargain.

Such surely would be the result had the lienholder stayed aloof from the bankruptcy proceeding (subject, of course, to the power of other persons or entities to pull him into the proceeding pursuant to § 501), and we see no reason why his acquiescence in that proceeding should cause him to experience a forfeiture of the kind the debtor proposes. It is true that his participation in the bankruptcy results in his having the benefit of an allowed unsecured claim as well as his allowed secured claim, but that does not strike us as proper recompense for what petitioner proposes by way of the elimination of the remainder of the lien.

2. This result appears to have been clearly established before the passage of the 1978 Act. Under the Bankruptcy Act of 1898, a lien on real property passed through bankruptcy unaffected. This Court recently acknowledged that this was so.

3. Apart from reorganization proceedings, no provision of the pre-Code statute permitted involuntary reduction of the amount of a creditor's lien for any reason other than payment on the debt. . . .

Congress must have enacted the Code with a full understanding of this practice. See H.R.Rep. No. 95-595, p. 357 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6313 ("Subsection (d) permits liens to pass through the bankruptcy case unaffected").

4. When Congress amends the bankruptcy laws, it does not write "on a clean slate." Furthermore, this Court has been reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history. Of course, where the language is unambiguous, silence in the legislative history cannot be controlling. But, given the ambiguity here, to attribute to Congress the intention to grant a debtor the broad new remedy against allowed claims to the extent that they become "unsecured" for purposes of § 506(a) without the new remedy's being mentioned somewhere in the Code itself or in the annals of Congress is not plausible, in our view, and is contrary to basic bankruptcy principles.

*Id.* at 417-20 (citations omitted). The Supreme Court reached this result by construing § 506(d) differently than § 506(a): while "allowed secured claim" in § 506(a) means the amount of the claim to the extent of the value of the collateral, the same term in § 506(d) means the full amount of the claim if the claim is secured by a lien. The Sixth Circuit has extended the Supreme Court's holding to the effort to "strip off" a junior lien on real property fully encumbered by a senior lien, as well as to "strip down" a lien on real property worth less than the debt. *Talbert v. City Mortgage Services (In re Talbert)*, 344 F.3d 555, 557-61 (6th Cir. 2003).

In applying § 722 the courts consistently interpret "allowed secured claim" in the sense used in § 506(a). *E.g.*, *In re Breckinridge*, 140 B.R. 642, 642 (Bankr. W.D. Ky. 1992) ("[A] debtor must pay the lesser of the value of the collateral or the total amount of the secured debt on the collateral in order to redeem the collateral."); *see* S. REP. NO. 95-989, at 95, *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5881 ("[T]he debtor will be required to pay the fair market value of the goods or the amount of the claim if the claim is less."). Accordingly, while *Dewsnup* prohibits a debtor from "stripping down" an undersecured claim on real property under § 506(d), a debtor may "strip down" an undersecured claim on personal property under § 722 by paying the creditor the value of the collateral. Likewise, while the Sixth Circuit has extended *Dewsnup* to prohibit a debtor from using § 506(d) to "strip off" a junior lien on real property fully encumbered by a senior lien, a debtor may use § 722 to "strip off" a junior lien on personal property fully encumbered by a senior lien. *In re Williams*, 228 B.R. 910 (Bankr. N.D. Ill. 1999) (distinguishing *Dewsnup*); *In re Lombardi*, 195 B.R. 585 (Bankr. W.D.N.Y. 1996); *see In re Fitzmaurice*, 248 B.R. 356, 363 (Bankr. W.D. Mo. 2000) (following *Williams* in *dicta*); *In re Virello*, 236 B.R. 199, 206 (Bankr. D.S.C. 1999) (following *Williams* in *dicta*).

4

For all the foregoing reasons, the court will enter an order granting the debtor's motion to redeem the 1999 Oldsmobile Alero automobile from Lendmark's second-priority security interest..

###